# UNITED STATES DISTRICT COURT
# DISTRICT OF COLORADO

Civil Action No. _____

**CHECKERS INDUSTRIAL PRODUCTS, LLC**,
a Colorado Limited Liability Company,

      Plaintiff,

v.

**THE ERICSON MANUFACTURING CO.
d/b/a ERICSON**, an Ohio corporation,

      Defendant.

## COMPLAINT AND JURY DEMAND

Plaintiff, Checkers Industrial Products, LLC ("Checkers"), by and through its counsel of record, Holland & Hart LLP, asserts the following complaint against Defendant, Ericson Manufacturing Company d/b/a Ericson (collectively, "Ericson"), and hereby alleges as follows:

## PARTIES

1. Plaintiff Checkers is a Colorado Limited Liability Company, with a principal place of business at 620 Compton Street, Broomfield, CO 80020.

2. Defendant The Ericson Manufacturing Co. is an Ohio corporation with a principal place of business at 4215 Hamann Parkway Willoughby, OH 44094.

3. Upon information and belief, The Ericson Manufacturing Co., does business as Ericson and TuffTraxx (collectively "Ericson").

4. Ericson makes, uses, sells, and/or offers for sale in the United States, and/or imports into the United States, cable protectors and cable guards.

## NATURE OF ACTION

5. This is a civil action for infringement of United States Design Patent Nos. D415,112 (the "'112 Patent") and D418,818 (the "'818 Patent") arising under 35 U.S.C. § 1, *et seq*.

6. This is also an action for trade dress infringement arising under the Lanham Act, 15 U.S.C. § 1051 *et seq*.

7. This is also an action for deceptive trade practices and unfair competition pursuant to the C.R.S. § 6-1-105 and the common law.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction under the Patent Laws of the United States 35 U.S.C. § 1 *et seq.*, and § 39 of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, and 28 U.S.C. §§ 1331 and 1338. This Court also has jurisdiction over Checkers' related state and common law claims pursuant to 35 U.S.C. §§ 1338 and 1367.

9. This Court has personal jurisdiction over Ericson because Ericson's contacts with this forum, including Ericson's doing business in Colorado and having committed acts of infringement within this forum by promoting, distributing, offering to sell and selling products covered by Checkers' design patents and trade dress. Ericson has purposely availed itself of the benefits of conducting business in the District of Colorado and is therefore subject to the jurisdiction in this Court.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (b), (c), (d), and 1400(b) because Ericson does business, has committed acts of infringement and is subject to personal jurisdiction in this Court.

## GENERAL ALLEGATIONS

### A.     Checkers' Design Patents

11.     Checkers has manufactured and sold quality safety products since 1987 and began manufacturing its cable protection product line in 1994. Like those of its competitors, Checkers' cable protectors are designed to safeguard electrical cables (and other types of cables, cords, hoses, tubing, etc.) from vehicle and pedestrian traffic. Checkers' cable protectors are also designed for safe and easy passage of vehicles and pedestrians over the cables and cable protectors.

12.     On August 1, 2011, Checkers acquired Peterson Systems International ("Peterson") and Yellow Jacket, Inc. ("Yellow Jacket"), together with all of their intellectual property assets, including the design patents and proprietary trade dress asserted here.

13.     Since 2011, Checkers has marketed a combined product offering from Checkers, Peterson, and Yellow Jacket including the Yellow Jacket, Wasp, Bumble Bee, DO-Max, DO-Lite, Fox, Crossover, Linebacker, Guard Dog, Cross-Guard, Ramp-Runner, Cross-Link, FastLane, Powerback, Super-Cross and Diamondback lines of cable protector products. All of these products have the principal purpose of protecting cords or tube-like conduit against damage from vehicular or pedestrian traffic.

14.     To distinguish it from competitors, Checkers' cable protectors are uniquely configured, distinctly colored, use exclusively shaped interlocking connectors and are embossed

with its distinctive tread pattern, among other features.  Checkers' cable protector products are depicted on the following website: https://www.checkersindustrial.com/products/cable-protectors/.  Checkers incorporates by this reference the trade dress of the cable protectors depicted on its website.

15. For many years, Checkers has continuously engaged in the development, manufacture, and sale of a wide array of cable guards and cable protectors, among other industrial safety products.

16. Since the introduction of its cable protection product line in 1994, Checkers has taken steps to protect its innovative cable management systems and designs.  For example, Checkers is the owner of various United States design patents relating to its cable protectors.  In particular, Checkers is the owner of all right, title and interest to United States Design Patent Nos. D415,112, entitled "Set of Connectors For a Modular Cable Protector" (Exhibit A) and D418,818, entitled "Modular Cable Protector" (Exhibit B) (hereinafter, the "Checkers Design Patents").  By virtue of its acquisition of Peterson, Checkers enjoys the goodwill created by Peterson's protection and enforcement of its intellectual property rights in the Yellow Jacket cable protectors, and further benefits from the goodwill associated with the use of the Yellow Jacket trade dress dating back for approximately 40 years.

**B.  Checkers' Trade Dress**

17. Checkers has enjoyed considerable success in marketing its cable protectors that have been sold for use in a variety of circumstances including, without limitation, construction sites, sports arenas, concert halls, convention centers, power companies, resort hotels, etc.  All

branches of the United States military, NASA, and the EPA, as well as all of the major national television networks have also used Checkers' cable protectors.

19. Through considerable investment, advertising, marketing and impressive sales, the public has come to know and associate Checkers' branded cable protectors as the sole source of these high quality, distinctive cable protectors.

19. Checkers constantly seeks to associate in the minds of its distributors and the consuming public its image as a provider of quality cable protectors. Its trade dress, including, without limitation the color scheme, tread pattern, interlocking connectors and wider central channel width, among other things, are designed to achieve (and have achieved) widespread recognition for quality and identifies to consumers that the origin of these products lies with Checkers. In particular, Checkers' trade dress for its cable protector products includes its uniquely styled 5-bar tread surface ("5-Bar trade dress"), its distinct color scheme ("color scheme trade dress"), and its T-shaped connector ("T-connector trade dress") as depicted in Exhibit B.

20. Through its various product lines and steadfast protection of its trade dress, Checkers has achieved a reputation in the trade and consuming public throughout the United States and the world for providing high quality cable protectors.

21. As a result of Checkers' extensive use and promotion of its trade dress, Checkers has built up and now owns valuable goodwill that is symbolized by its unique trade dress. Purchasing distributors and the consuming public have come to associate its trade dress with Checkers. In addition, the Checkers' trade dress is distinctive and non-functional and has achieved significant secondary meaning.

5

### C.     Ericson's Infringing Activities

22.     Without Checkers' authorization, Ericson has made, used, offered to sell, promoted, distributed, sold, and/or imported into the United States cable protectors, including those having designs that are, in the eye of the ordinary observer, substantially the same as the designs covered by the Checker Design Patents and confusingly similar to Checkers' trade dress (hereafter, the "Infringing Cable Protectors").  Furthermore, the parties' goods are sold through overlapping channels of trade.

23.     Ericson has made, used, offered to sell, promoted, distributed, sold, and/or imported into the United States cable protectors through its websites, www.ericson.com and www.tufftraxx.com and its sales/dealer network, including those setup and managed by Highland Electrical Sales Agency, Inc., 420 Corporate Circle, Ste. E Golden, CO 80401.  A true and correct copy of Ericson's Electrical Representatives for the State of Colorado is attached hereto and incorporated by reference as Exhibit C.

24.     On information and belief, Ericson started its infringing activities by asking a Chinese company to copy Checkers' GUARD DOG product.  On information and belief, at its behest, a Chinese company in fact copied Checkers' patented GUARD DOG product and produced knock-off cable protectors which Ericson sold in the United States.  On information and belief, Ericson filed Checkers' name and the '818 patent number off the back of the original GUARD DOG product and requested the Chinese manufacturer to copy the Checkers product, which it subsequently imported to and sold within the United States .

25.     Checkers learned about Ericson's initial infringing activities because Checkers discovered the knock-off cable protector at the site of one of the end-users in the United States.

26.     Checkers subsequently visited the Chinese manufacturer of the GUARD DOG knock-off product and was told that Ericson requested the copy of the original product and had delivered a sample to the Chinese manufacturer, with the Checkers name and patent number filed off and Checkers was allowed to take pictures of the altered Checkers product.

27.     Ericson's initial Infringing Cable Protectors infringe the '818 patent and Checkers' trade dress rights in the GUARD DOG product.  Checkers is entitled to a disgorgement of all profits and all damages that it sustained as a consequence of Ericson's sale of the initial Infringing Cable Protectors.

28.     Upon learning of Ericson's first Infringing Cable Protectors, Checkers contacted Ericson to inform Ericson that its cable protectors infringe Checkers' patents and trade dress and requested that it cease and desist from infringing Checkers' intellectual property rights.

29.     Following these communications, and upon information and belief, Ericson modified its designs in a failed attempt to evade Checkers' intellectual property rights.

30.     Specifically, first, Ericson changed its color scheme to yellow and blue; however, yellow is a prominent color in Checkers' Yellow Jacket, Linebacker, Grip Guard and other cable protector products, and thus in view of its prior knock-off Infringing Cable Protectors, Ericson's color change remains confusingly similar.

31.     Second, Ericson changed the surface pattern on its cable protectors from five straight bars as claimed in the '818 patent to four bars that are not straight; but in view of its prior infringement of the patented 5-Bar design, the new surface pattern is not distinguishable in the eye of an ordinary observer.

32. Finally, instead of using Checkers' proprietary Dog Bone Connectors, Ericson decided to use T-connectors, which are identical to Checkers' patented T-connectors in the eye of an ordinary observer.

33. Ericson's second Infringing Cable Protectors, in view of this history, continues to infringe Checker's trade dress rights. Images of the infringing Ericson cable protectors can be seen in Exhibit D, attached hereto and incorporated by reference.

34. The Infringing Cable Protectors also have an identical T-shaped interlocking connector as the one protected by the '112 Patent. An expanded view of the infringing Ericson's T-connector is shown below (*see also* Exhibit D):



35. In the eye of the ordinary observer, Ericson's T-connector is indistinguishable from Checkers' patented T-connector and thus infringes the '112 patent.

36. Ericson's products as set forth above, including the total overall impression of the product, its size, shape, color scheme configuration and design, from the launch of the initial Infringing Cable Protectors to the current Infringing Cable Protectors, is likely to mislead consumers to mistakenly believe that the Infringing Cable Protectors originate from Checkers or that there is an affiliation or sponsorship by Checkers of the Infringing Cable Protectors.

37.     The likelihood of confusion, mistake, and deception engendered by Ericson's misappropriation of Checkers' trade dress is causing irreparable harm to the goodwill symbolized by the overall design including the black and yellow color scheme, the patented and distinctive 5-bar tread pattern and the T-connectors, which symbolize and embody Checkers' reputation for quality.

## FIRST CAUSE OF ACTION
### (PATENT INFRINGEMENT—35 U.S.C. § 271)

38.     Checkers re-alleges each and every allegation set forth in paragraphs 1-37 above, inclusive, and incorporates them by reference herein.

39.     Ericson has made, used, offered to sell, sold and/or imported into the United States, and is still making, using, offering to sell, selling and/or importing into the United States cable protectors and cable guards that infringe Checkers Design Patents without Checkers' authorization.  Ericson's actions constitute patent infringement under 35 U.S.C. § 271(a).

40.     Upon information and belief, Ericson has been and is still inducing others to infringe the Checkers Design Patents.  Ericson's actions constitute induced infringement under 35 U.S.C. § 271(b).

41.     Checkers has no adequate remedy at law, has suffered and continues to suffer irreparable harm as a result of Ericson's acts, and is therefore entitled to a preliminary and permanent injunction to enjoin Ericson's infringements of the Checkers Design Patents.

42.     Checkers is entitled to recover all damages caused by Ericson's infringement under 35 U.S.C. § 284.

43. Due to Ericson's prior notice of Checkers' patent rights, Ericson's continued infringement of the Checkers Design Patents is willful and represents a reckless disregard of Checkers' patent rights. Accordingly, Checkers' is entitled to treble damages and attorneys' fees and costs incurred in this action, along with prejudgment interest under 35 U.S.C. §§ 284, 285.

## SECOND CAUSE OF ACTION
### (TRADE DRESS INFRINGEMENT—LANHAM ACT § 43(a))

44. Checkers re-alleges each and every allegation set forth in paragraphs 1-43 above, inclusive, and incorporates them by reference herein.

45. Checkers is entitled to legal protection of its trade dress under § 43(a) of the Lanham Act, which trade dress includes the total or overall impression of Checkers' cable protectors, their unique configuration, packaging size, shape, color scheme, design, promotional literature, product specifications, T shaped interlocking connectors, surface pattern, among other things, as Checkers' cable protectors are presented to the consuming public.

46. Ericson has so closely imitated and/or copied the trade dress of Checkers' cable protectors, particularly the Guard Dog trade dress, and the 5-Bar trade dress, the color scheme trade dress and its T-connector trade dress such that the consuming public has likely been confused, and will continue to be confused as to the source or origin of Ericson's Infringing Cable Protectors, and will erroneously believe that Ericson's products come from Checkers or are sponsored by, affiliated with, or licensed by Checkers.

47. On information and belief, Ericson's copying of Checkers' cable protector trade dress was intentional, and in bad faith. Ericson intended to create and/or market a cable protector confusingly similar in appearance to Checkers' cable protectors to unfairly trade off

Checkers' goodwill.  Ericson has succeeded in producing, distributing and/or offering cable protectors, which are confusingly similar in appearance to Checkers' cable protectors.

48. Ericson's acts of trade dress infringement have caused and continue to cause damages and injury to Checkers.

49. Checkers may recover for its damages an award to compensate Checkers for the injuries and damages it has sustained as a result of Ericson's conduct which violates § 43(a) of the Lanham Act.

50. Because Ericson's acts from the beginning were intentional, willful, and/or deliberate, Checkers is entitled to an award of treble damages under § 43(a) of the Lanham Act.

51. Checkers is entitled to an award of pre-judgment interest for damages sustained as a result of the Ericson's wrongful conduct.

52. Ericson's wrongful, malicious, fraudulent, deliberate, willful, intentional and/or incredible conduct makes this case an exceptional case, entitling Checkers to an award of attorneys' fees and costs under the Lanham Act.

53. Checkers has no adequate remedy at law, has suffered and continues to suffer irreparable harm as a result of Ericson's acts, and is therefore entitled to a preliminary and permanent injunction to enjoin Ericson's wrongful conduct.

### THIRD CAUSE OF ACTION
### (DECEPTIVE TRADE PRACTICE – C.R.S.A § 6-1-105)

54. Checkers re-alleges each and every allegation set forth in paragraphs 1-53 above, inclusive, and incorporates them by reference herein.

55. By advertising, promoting, and selling products using the Checkers' trade dress, or colorable and confusing imitations thereof, Ericson has and continues to knowingly and willfully make false representations as to the source, sponsorship, approval, or certification of its products.

56. Ericson's acts are likely to cause, have caused, and will continue to cause confusion as to the source and/or sponsorship of Checkers' products.

57. Ericson's conduct has occurred in the course of its business and has significantly impacted the public as actual or potential customers of Ericson's and Checkers' products.

58. By its conduct, Ericson has caused Checkers irreparable harm and injury to its legally protected interests, including its patent and trade dress rights.

59. Ericson's conduct constitutes an unfair or deceptive trade practice, which has caused and continues to cause damages and injury to Checkers for which Checkers must be compensated.

60. Checkers has no adequate remedy at law.

### FOURTH CAUSE OF ACTION
(UNFAIR COMPETITION—COMMON LAW)

61. Checkers re-alleges each and every allegation set forth in paragraphs 1-60 above, inclusive, and incorporates them by reference herein.

62. Checkers was the first to use the its trade dress, including, but not limited to its 5-Bar trade dress, its color scheme trade dress, and its T-connector trade dress. As a result of Checkers' continuous promotion and sales of cable protection products bearing its distinctive trade dress for many decades, the trade dress has become widely known and Checkers' has been

identified in the public mind as the manufacturer of the products to which its trade dress is associated with.

63. Ericson, with knowledge of and with intentional disregard of Checkers' rights, continues to advertise, promote, and sell products using the Checkers' trade dress, or colorable and confusing imitations thereof. Ericson's acts are likely to cause, have caused, and will continue to cause confusion as to the source and/or sponsorship of Checkers' products.

64. In taking the above actions, Ericson has participated in unfair competition. The actions as alleged above, constitute a misappropriation and infringement of Checkers' trade dress rights in its cable protectors and accompanying goodwill and reputation under the Lanham Act, federal common law and the common law of the State of Colorado, and constitute acts of unfair competition.

65. As alleged above, Checkers' has distinctive and protectable rights. Ericson's actions cause a likelihood of confusion among consumers in the marketplace and therefore constitute unfair competition.

66. Ericson's acts of infringement have caused and continue to cause damages and injury to Checkers for which Checkers must be compensated. Such infringing activities of Ericson are willful and intentional, thereby justifying an award of exemplary damages.

67. Checkers has no adequate remedy at law.

## **JURY DEMAND**

Checkers hereby demands that all claims or causes of action raised in this Complaint be tried by a jury to the fullest extent possible under the United States and Colorado Constitutions.

## PRAYER FOR RELIEF

WHEREFORE, Checkers prays that this Court:

A. Preliminarily and permanently enjoin and restrain Ericson, their officers, directors, principals, agents, servants, employees, successors and assigns, and all those in active concert or participation with them from all acts of patent infringement, trade dress infringement, dilution, unfair competition or any other wrongful conduct alleged in this Complaint;

B. Preliminarily and permanently enjoin and restrain Ericson, their officers, directors, principals, agents, servants, employees, successors and assigns, and all those in active concert or participation with them from (a) using Checkers' patented design features covered by the '112 Patent and the '818 Patent; and (b) using Checkers' trade dress in any advertising, promotional, sales, offers for sale or importation activity concerning its cable protection products;

C. Direct that Ericson be required to pay Checkers damages it has sustained, to account for or relinquish to Checkers' all gains, profits, and advantages derived by Ericson through its unlawful conduct complained of in this Complaint;

D. Direct that Ericson be required to pay Checkers treble damages under § 43(a) of the Lanham Act for Ericson's deliberate and willful misconduct;

E. Direct that Ericson pay Checkers an award of punitive damages for the Ericson's deliberate and willful misconduct;

F. Direct that Ericson pay Checkers pre and post-judgment interest as recoverable under statute and common law;

G.  Direct that Ericson pay Checkers its reasonable attorneys' fees in light of the exceptional nature of this case; and

H.  Award Checkers such further relief as the Court may deem just and proper.

Dated:  August 27, 2013.

                  Respectfully submitted,

*s/Mark A. Miller*
Mark A. Miller (UT Bar #9563)
*admitted to practice in Colorado on 7/27/2012*
HOLLAND & HART LLP
222 S. Main Street, Suite 2200
Salt Lake City, UT 84101
Telephone:  (801) 799-5800
Facsimile:  (801) 799-5700
E-mail:  mamiller@hollandhart.com

**ATTORNEY FOR PLAINTIFF**
**CHECKERS INDUSTRIAL PRODUCTS, LLC**

## TABLE OF EXHIBITS

Exhibit A    U.S. Design Patent No. 415,112

Exhibit B    U.S. Design Patent No. 418,818

Exhibit C    Copy of Ericson's Electrical Representatives ("Where to Buy") locator feature for the State of Colorado, from its website (last viewed on August 27, 2013).

Exhibit D    Copy of Ericson's product brochure including product images for its infringing cable protectors (last viewed on August 27, 2013).

6378980_1